# Fisher *versus* Philadelphia.

1. Possession is title, and he having such title can be ousted only by him who shows one superior to it.

2. A settlement showed against Nicholson in favor of the Commonwealth a balance which was a lien on his lands. An act was passed authorizing commissioners to sell the lands and if they deferred the payment of the purchase-money, to take bonds with sureties and give the purchaser a certificate of his purchase, of having given bond, &c., the bonds to be deposited with the state treasurer; on producing to the secretary of the Commonwealth the certificate with the treasurer's receipt for the purchase-money, the secretary was to make a deed to the purchaser. *Held*, that a purchaser acquired no title to the land without complying with these conditions.

3. A purchaser having given his bond had an executory contract and he might obtain a deed on the payment of the bond, but would not be entitled to possession before paying and getting his deed.

4. Myer bid for Nicholson land sold by the commissioners, they reported the sale, &c., and that he had given bond with sureties—naming them; suit in debt was brought by the state treasurer against one who was named in the report as surety, the sum named being exactly twice the amount of the bid; there was no evidence that the bidder had paid the bond or done anything required by the act after giving it. *Held*, there was no evidence for the jury that the bidder had any title.

5. Green *v.* Watson, 10 Casey 332, distinguished.

March 6th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1873, No. 111.

This was an action of ejectment by John D. Deibert against the city of Philadelphia.   The writ was issued June 5th 1858, for an undivided thirty-second part of a tract of land, situate in Mahanoy township, Schuylkill county, containing about 400 acres, " being the same tract which was surveyed in pursuance of warrant dated June 13th 1793, granted to John Barber," &c.   The sheriff returned, " Served a copy of this writ personally on Franklin B. Kaercher, agent for the city of Philadelphia."

On the 2d of May 1870, the death of the plaintiff was suggested, and Daniel B. Fisher, his alienee, was substituted as plaintiff.

The land in dispute was part of what was known as the Nicholson lands.

On the 18th of February 1785 (2 Dallas L. 251), an act was passed enacting that on the settlement of any public account by the comptroller-general and the confirmation by the Supreme Executive Council, whereby any balance that should be found due from any person to the Commonwealth, it should be deemed a lien on all the real estate of such persons throughout the state.

Under the Act of March 31st 1806 (4 Smith's L. 355), Cadwallader Evans, Joseph Hiester and John Lyon were appointed commissioners to obtain the information therein specified relating to the real estate of John Nicholson, deceased, and ascertain the quality of the estate, its extent in each county and estimate its value.

By Act of March 19th 1807 (4 Smith's L. 381), on the approbation of the report of the commissioners appointed under the Act of 1806, the governor was directed to issue process to the commissioners to sell such lands or interest in lands of Nicholson as they should specify in their report, giving notice by advertisement, &c., as directed by the act.   In case of sales under the act the purchaser should pay the purchase-money into the state treasury, and the payment of no part of the purchase-money should be deferred longer than four years; when deferred to any time within that period, such deferred payment should carry interest and should be secured by bonds from the purchaser, with surety approved by the commissioners, payable to the treasurer of the Commonwealth and delivered to the commissioners at the time of sale ; on the receipt of the purchase-money or the bonds, the commissioner should deliver to the purchaser a certificate of the property sold, the time and place of sale and the bonds received, and also within two months deliver to the treasurer all bonds received on account of the sales, and within the same time make a particular return into the office of the secretary of the Commonwealth of the quantity

[Fisher *v.* Philadelphia.]

of land sold, the situation, price, how paid or secured, and on application of the purchaser, the secretary of the Commonwealth on production of the certificate and the treasurer's receipt for the consideration, was required to execute a deed to the purchaser for the property sold for such estate as Nicholson had at the time of the commencement of the Commonwealth's lien against his estate, which deeds or copies of their records of them should be primâ facie evidence of the grantee's title.

The case was tried, June 5th 1872, before Elwell, P. J., of the Twenty-sixth district.

The plaintiff gave in evidence the warrant, dated June 13th 1793, to John Barber for 400 acres of land in the county of Northumberland, and survey October 17th 1794 ; patent October 20th 1794 to Robert Morris, reciting deed from warrantee ; deed July 8th 1795 Robert Morris to John Nicholson for a number of tracts, including the Barber warrant, recorded November 2d 1797 ; certified account, December 20th 1796, of comptroller-general against Nicholson, showing a balance of $63,729.89 ; another certified account of comptroller-general against Nicholson, dated December 22d 1796, showing against him a balance of $51,209.22 ; April 4th 1807, warrant to Cadwallader Evans and others, commissioners to sell the Nicholson lands ; report of the commissioners, dated July 18th 1807, of the sale under the warrant of April 4th 1807, and after due notice, of a number of tracts of land " on the head waters of Mahanoy and Catawissa creeks in Northumberland county, held under warrants in the names and dates following, viz. : 1793, June 13th, John Barber, 400 ;· sold to Philip Meyer at eight cents per acre," with twenty-eight others sold to Meyer and four others to Meyer and another, the whole amounting to $2049.50. The commissioners also reported, " the payment whereof to the state treasurer the said Philip Meyer has secured by his own bond and that of John Meyer and George Miller." Also record of suit in the Common Pleas of Berks county, William Findley, state treasurer, against George Miller, surviving obligor, to April Term 1812, debt $4099. " Evans appears for defendant, craves oyer of the writing obligatory and imparls specially. January 4th 1816, not to be brought forward ; November 1816, list ; November 11th 1816,· judgment for costs ; May 11th 1819, not to be brought forward." The plaintiff gave evidence by Frank P. Meyer, that his grandfather, Philip Meyer, resided in Hamburg, Schuylkill county, and died in 1811 or 1812 ; he stated the names of the persons who were the heirs of Philip Meyer in 1857.

The plaintiff then gave in evidence a deed dated April 16th 1857, from Franklin Philip Meyer and others (the persons testified by him to have been the heirs of Philip Meyer) to Jeremiah Beidler, the right, title and interest of the grantors in twenty-nine tracts of land in the townships of Mahanoy, Union and Rush, in

[Fisher v. Philadelphia.]

Schuylkill county, granted by warrants of 13th June 1793, &c., of four hundred acres each, unto "John Barber" and others named and patented to Robert Morris, being the same premises which Morris on the 8th of July 1795 granted to John Nicholson, and which the commissioners of the Nicholson lands, appointed under Act of March 31st 1806, sold on the 23d of June 1807 to Philip Meyer, "and which on his death (who died intestate) descended to his heirs at law, to wit, the parties of the first part," &c.

The plaintiff then gave in evidence deed dated July 13th 1857, from Jeremiah Beidler to John D. Deibert for a thirty-second part of twenty-three adjoining tracts, situate partly in Mahanoy and partly in Union township, Schuylkill county, "surveyed in pursuance of twenty-three warrants of 400 acres each, dated 13th day of June 1793, &c., and granted to John Barber" and others named, containing together 10,000 acres, being part of the same tract which the heirs of Philip Meyer deceased granted to Beidler. Also deed dated March 28th 1861, from Deibert to Daniel B. Fisher, the substituted plaintiff, for the same title he had derived under the Beidler deed in twenty-one of the tracts mentioned in that deed, one of which was the Barber warrant, and the title being described in the same way.

The foregoing evidence, from the report of sale by the commissioners and including that, was received under objection by the defendant and exception.

The plaintiff gave other evidence not important to be noticed, and closed.

On motion of the defendant the court directed judgment of nonsuit to be entered.

The plaintiff removed the record to the Supreme Court and assigned for error, the entering the judgment of nonsuit.

*F. W. Hughes* and *B. W. Cummings* (with whom were *G. R. Kaercher, G. E. Farquhar, G. F. Baer, J. W. Ryon* and *Woodward*), for plaintiff in error.—The secretary of the Commonwealth had no discretion as to executing a deed to the purchaser, he could be compelled to do so by mandamus: Comm'th *v.* Cochran, 6 Binney 456; 1 S. & R. 473. The return of the commissioners vested the title in Philip Meyer: 4 Kent Com. 433–6; Pope *v.* Cutler, 9 Shep. 105; Booth *v.* Booth, 7 Conn. 350; Philips *v.* Parks, 4 Vermont 488; Morse *v.* Child, 7 N. H. 581.

The agreement of sale with the commissioners, their certificate, the bond for the purchase-money with the return of these facts, passed an equitable title to Meyer, which under the circumstances was executed by the Statute of Uses: Strimpfler *v.* Roberts, 6 Harris 297. The secretary's deed can be made only to the purchaser, and if he should obtain it after a sale by him, he would be a trustee for his alienee: Brown *v.* McCormick, 6 Watts 60; Ro-

[Fisher *v.* Philadelphia.]

bertson *v.* Robertson, 9 Id. 43; McCall *v.* Coover, 4 W. & S. 151; Wilson's Estate, 2 Barr 325; Barr *v.* Gratz, 4 Wheaton 213. No acts of the secretary would be valid unless authorized by law: Frick *v.* Kitchen, 4 W. & S. 30; Strother *v.* Lucas, 12 Peters 454; Johnston *v.* Bingham, 9 W. & S. 56. The acts of public agents with limited power are void if they exceed the power conferred upon them: Hunter *v.* Howard, 10 S. & R. 243; Jones *v.* Tatham, 8 Harris 398; Straub *v.* Drumm, 3 Casey 36; Shields *v.* Miltenberger, 2 Harris 78; Foster *v.* Shaw, 7 S. & R. 156, 161; Morton *v.* Harris, 9 Watts 319; Seechrist *v.* Baskin, 7 W. & S. 403; Riland *v.* Eckert, 11 Harris 216.

The commissioner's sale passed title to Philip Meyer without the secretary's deed and upon the execution by him and his sureties of the bond, and acceptance of it by the commissioners: Bellas *v.* McCarty, 10 Watts 21; Green *v.* Watson, 10 Casey 332.

*F. B. Gowen, E. O. Parry* and *Porter* (with whom were *L. Bartholomew, C. Little* and *F. C. Brewster*), for defendant in error.—When a special authority is delegated by law to particular persons to take away a man's property and estate against his will, then it must be so pursued: Wistar *v.* Kammerer, 2 Yeates 100; Gilbert *v.* Probst, 1 Id. 300; Huston *v.* Foster, 1 Watts 478. The sale made by the commissioners to an individual, was an executory contract: Bortz *v.* Bortz, 12 Wright 385, and cases there cited.

The purchaser had no right to the possession until the delivery of the deed, and the right remains in the owner of the legal title: Hawk *v.* Stouch, 5 S. & R. 157; Hall *v.* Benner, 1 Penna. R. 402; Slater's Appeal, 4 Casey 170. Yet he has by his contract an inceptive interest in the soil, which may be bound by a judgment: Oarkhuff *v.* Anderson, 3 Binney 4; Morrison *v.* Wurtz, 7 Watts 438; Stephens's Appeal, 8 W. & S. 188; Slater's Appeal, 4 Casey 169; Stoever *v.* Rice, 3 Wharton 25. When a contract has been made for the purchase of land, the purchaser shall not recover possession until he has paid or tendered the purchase-money, and this must be done previously to the commencement of an ejectment: Smith *v.* Painter, 5 S. & R. 224; Marlin *v.* Willink, 7 Id. 298; Minsker *v.* Morrison, 2 Yeates 344. A statute derogatory to private property must be construed strictly and not enlarged by intendment: Dwarris on Statutes 750; Marshall *v.* Ford, 1 Yeates 195; Young *v.* Martin, 2 Id. 312; Watt *v.* Gillmore, Id. 330; Blair *v.* Caldwell, 3 Id. 284; Cromwell *v.* McCalmont, 1 S. & R. 126; Blair *v.* Waggoner, 2 Id. 472; Birch *v.* Fisher, 13 Id. 208; Peters *v.* Heasley, 10 Watts 210; Hoffman *v.* Bell, 11 P. F. Smith 444.

The opinion of the court was delivered, May 11th 1874, by

GORDON, J.—In Shumway *v.* Phillips, 10 Harris 151, the actual

possession of land was held sufficient to protect the defendant in error against all but the owner of the legal title. And in Green *v.* Kellum, 11 Harris 254, it was ruled that one who enters and claims land as his own, improves it and maintains the possession, must be presumed to have entered by color of title, and must be so treated until a superior right is shown against him.

Possession then is title, and the one having such title can be ousted only by him who shows one superior to it.

In the case under consideration the city is found in possession of the disputed premises. The plaintiff has shown no prior possession which the defendant disturbed, hence it cannot be treated as a mere intruder upon the plaintiff's right. It follows therefore that the plaintiff must show some title better than that arising from the defendant's possession, or he is in no position to reverse the ruling of the court below.

In order to show such better title he endeavors to connect himself with that of John Nicholson, who held through Robert Morris, from the Commonwealth. For this purpose he exhibits certified copies of accounts of the Commonwealth against John Nicholson, late controller-general, filed December 1796, showing balances which together amount to $115,009.06, which by force of the Act of 1785 became a lien on all his lands throughout the state; the warrant of the governor to Cadwalader Evans, Jr., Joseph Lyon and Joseph Hiester, commanding them to sell all the lands of Nicholson, set forth in the schedule thereto annexed, under and by virtue of the Act of March 19th 1807 ; and also the report of the above-named commissioners, dated July 18th 1807, setting forth *inter alia*, the sale of thirty-three tracts, including that now in dispute, to Philip Meyer, the ancestor of the plaintiff's vendors, for the sum of $2849.50, secured by his own bond, and that of John Meyer and George Miller. Whether this showing was sufficient to vest the Nicholson title in Philip Meyer, is the question submitted for our determination.

The act above recited (19th March 1807) required the payment of the purchase-money of the lands sold, into the state treasury, within four years from the date of purchase. Whether such payment should be deferred for any length of time "within that period," was referred to the discretion of the commissioners, who, if they did agree to defer such payments, were directed to secure them by the bonds of the purchasers with approved sureties. Upon receipt of such bond, they were to deliver to the purchaser a certificate of the property sold to him, setting forth the time and place of sale, and the bonds received. These bonds were to be delivered into the hands of the state treasurer, and then "on production of the certificate aforesaid, and the treasurer's receipt for the consideration of the purchase," the secretary of the Commonwealth was directed to make deeds to the purchasers for "such

estate, as the said John Nicholson had and held in the same at the
time of the commencement of the liens of the Commonwealth
against the estate of the said John Nicholson." By consulting the
act, it will be seen that the powers of the commissioners were
strictly limited. They had power to make the sales and receive
the purchaser's bonds, but nothing more. They were not authorized
to receive purchase-money, make deeds or enforce their contracts
of sale. In this, it will be observed, they had much less power
than a sheriff or a county treasurer. The purchaser by his bid
made but one step towards title. If, following up this first step,
he procured the certificate of the commissioners, and paid the pur-
chase-money into the treasury, he became possessed of an equita-
ble title which would secure to him the right of possession, and
upon which he might at any time demand his deed. So where,
instead of paying the purchase-money, the purchaser gave his bond
as provided by the act, he would have an executory contract upon
which he might obtain a deed, upon the payment thereof, but in
such case he would not be entitled to possession before he obtained
his deed or made such payment: Baum *v.* Dubois, 7 Wright 260.

Now Philip Meyer seems to have accomplished but the one step
in the way of title. He bid off the disputed tract at the commis-
sioners' sales. But, having regard only to the legal evidence in the
case, he made no other step. It is true that the return of the com-
missioners set forth that the bond of Philip Meyer was taken as
security for the purchase-money, with that of John Meyer and
George Miller. But supposing this return to be evidence for all
it sets forth, it does not inform us when, where or how it was exe-
cuted, or the time it had to run. Such evidence is too indefinite
in itself to amount to anything in the way of proof of a lost bond,
or to prove the contents of such bond. But it is supplemented by
the docket entries of the Common Pleas of Berks county, to April
Term 1812; William Findley, Esq., treasurer of the state of Penn-
sylvania, against George Miller, surviving obligor, in which it
appears there was a summons in debt for $4099, that Evans ap-
peared for the defendant, craved oyer of the writing obligatory and
imparled specially. Further, that on the 11th of November 1816,
there was judgment for costs, but in whose favor is not stated, and
on the 11th of May 1819, we find the final entry, "not to be brought
forward." We are now called upon to presume that because George
Miller is mentioned in the return of the commissioners, as one of
the sureties of Philip Meyer, and because the amount for which suit
was brought, was just double the amount of the purchase-money
mentioned in that return, therefore the suit was brought on the
Philip Meyer bond. An unprejudiced mind must concede that
such a presumption would be a violent one. For admitting such
entries to be evidence for any purpose, we cannot imagine how
they could be evidence of anything more than appears upon their

[Fisher v. Philadelphia.]

face, but a bond of Philip Meyer to the Commonwealth, for the purchase-money of thirty-three tracts of land does not so appear, neither does it appear in the precipe or writ. We cannot perceive that this supplement helps the matter in the least, and we must conclude that the alleged bond is not proved. But suppose we concede that it is proved, still we have no evidence of payment, and without this, Philip Meyer had but a naked equity, which sixty-seven years of time has so effectually buried among the things of the dead past, that no amount of legal thaumaturgy can avail to resurrect it.

Our attention has been directed to the case of Green v. Watson, 10 Casey 332, as in point for the plaintiff. Let us see if it is so. Judge Baldwin had bid off the land in dispute at the Nicholson sales in July 1807, transferred his purchase to George Bumford in 1835, who, in the same year, obtained a deed from the Commonwealth. Now as this deed, under the terms of the statute, was prima facie evidence, that all the precedent steps were regular, and that the lien of the Commonwealth had been extinguished by the payment of the purchase-money, it was held sufficient to support a tax sale in 1823. The statement of this case shows it to be far from supporting that of the plaintiff now under consideration. It is urged that Justice Thompson, in the above-cited case, said that the bond taken for the purchase-money was a substitution for the lien of the state against Nicholson, and hence discharged it. Admit this to be correct, how does it help the plaintiff? If a bond were given by Judge Baldwin, by the prima facie presumption arising from the deed, it was paid when due. But Fisher exhibits no deed either to himself or Philip Meyer. He has no certificate from the commissioners, he has proved no bond, and he has paid no purchase-money. In no particular but the single one of a bid made at the Nicholson sales, does his case resemble that of Green v. Watson.

The judgment of the court below is affirmed.